[Crim. No. 2771.  Second Appellate District, Division Two.—November 6, 1935.]

THE PEOPLE, Respondent, v. EDWARD COOK, Appellant.

Donald Mackay for Appellant.

U. S. Webb, Attorney-General, and John O. Palstine, Deputy Attorney-General, for Respondent.

WOOD, J.—Defendant and appellant Edward Cook was tried before the court without a jury together with defendants

Davis and Weisbrod on an information charging them with the theft of certain bonds of the value of $5,000. All of the defendants were found guilty and appellant prosecutes this appeal from the judgment and from the order denying his motion for a new trial.

The evidence relied upon for conviction comes mainly from the complaining witness, Mrs. Powell. From her testimony the following circumstances appear: Defendant Davis called upon her on October 26, 1934, and stated that he and the other two defendants had made arrangements with the manager of a country club in the city of Long Beach for the sale of membership tickets in the club; that the tickets would entitle the holders to membership in the club and would also qualify them to be officers of the club, the election of officers to be by drawing, the president to receive a salary of $20,000. Davis said they were going to consummate the deal through defendant Cook, who had a Chinese friend in San Francisco having 2,500 agencies on the coast where the tickets could be sold; that the tickets could be sold in pool halls, barber shops and cigar stores. Davis asked her for $5,000 "to put the deal over". Mrs. Powell disclaimed interest in the project and Davis suggested that Cook could explain more about the scheme and that he would have Cook call upon her. Davis told her she was to receive a bonus of $5,000 in addition to the return of her money; that the Chinaman, as distributing agent for the memberships would receive 20 per cent of the gross receipts, 55 per cent would be distributed to the members in salaries, and the balance would be for the three defendants after the repayment to Mrs. Powell of her money and the payment of the bonus. Cook called upon her on October 29, 1934, and repeated in substance the statements made by Davis. She manifested some interest in the matter and Cook called upon her again on October 30th and also on October 31st. Cook asked Mrs. Powell what bonds she had and she showed him a list of her holdings. Finally Mrs. Powell went with Cook to a bank where she obtained the bonds needed for the scheme and they then returned to her apartment. She gave him bonds of the value of $5,000 and he delivered to her a promissory note signed by each of the defendants and also promised to give her the accrued interest on the bonds. At the same time he delivered to her a document entitled "Temporary Receipt and Agreement". In this docu-

ment, which was also signed by all of the defendants, receipt was acknowledged of the bonds "as a loan for a period of four months" and promise was made therein to return the same or similar bonds or their cash market value equivalent. The money which Mrs. Powell was asked to furnish through the medium of the bonds was to be used by defendant "to incorporate and get out the literature, and to rent an office, and for travelling expenses". Cook received the bonds from Mrs. Powell on October 31, 1934.

During the same afternoon in which he received the bonds, Cook borrowed $300 on the bonds from a bank. The next day the bonds were sold by the bank on the order of Cook and the proceeds of the sale, $4,618.76, was placed in the bank to the credit of the defendants, each of them signing the signature card. On the following day three $1,000 checks were drawn on the account, each in favor of one of the defendants, and all of the checks were promptly cashed. On November 2, 1934, a check was drawn to the order of cash in the amount of $48.76 and this amount was used to purchase a cashier's check in favor of Mrs. Powell, the amount being the sum due for accrued interest on the bonds. This check was sent to Mrs. Powell from San Francisco on November 13, 1934. Between November 16 and November 27, 1934, checks were drawn by the defendants from time to time until the account was finally closed.

Mrs. Powell attempted to contact defendants Weisbrod and Davis at the office where they were employed, about November 4, 1934, in order to have her bonds returned. At that time she talked to Mr. Lemon, the broker in charge of the office, who took her to the office of Mr. Seiler, an attorney. On November 6, 1934, Mr. Lemon discussed the matter with Davis and Davis said that the bonds had not been sold. On November 7, 1934, Davis told Mr. Lemon that the bonds had been sold. Mr. Seiler had a conversation with Cook some time after January 1, 1935, in which Cook stated that the money he had received from the bank account had been used for "front money"; that it was "to put on a show, to buy some clothes, buy an automobile and other things". He further stated that he had used most of the money after Mr. Seiler had, on behalf of Mrs. Powell, asked for the return of the bonds.

Mr. Brayton, deputy district attorney, testified that Cook admitted to him that he had stated to Mrs. Powell that the memberships were to be sold through a nationally known Chinese organization with headquarters in San Francisco. When Mr. Brayton asked him what he expected to do with the securities obtained from Mrs. Powell he stated that they planned to take over a dude ranch near San Bernardino.

■ Appellant contends that the evidence is insufficient to sustain the judgment, claiming that, if anything, the testimony of Mrs. Powell shows the offense of obtaining money by false pretenses and that her testimony is not corroborated. This contention cannot be upheld. Since the amendment in 1927 to section 484 of the Penal Code defendant may be convicted of grand theft upon proof showing either larceny, embezzlement or obtaining money by false pretenses. The evidence in this case is amply sufficient to uphold a finding by the court of larceny by trick and device. The title to the property did not pass from the complaining witness; it was especially referred to in writing as a loan. The crime of larceny is committed when a person with a preconceived design to appropriate property to his own use obtains possession of it by means of fraud or trickery. (*People* v. *Edwards*, 72 Cal. App. 102 [236 Pac. 944].) Consideration of the evidence above outlined leads unerringly to the conclusion that the defendants tricked Mrs. Powell into delivering the bonds to them and that the money derived from the sale of the bonds was not used for the purpose for which it was intended. Indeed, it is difficult to see how the trial court could have done other than find all of the defendants guilty.

■ Complaint is made of the admission in evidence of the testimony of Mrs. Powell as to the first conversation had with defendant Davis in the absence of defendant Cook. Conspiracy between the three defendants was unquestionably established and the activities and statements of Davis in furtherance of the conspiracy were admissible in evidence. The ruling of the court was proper.

■ The trial court received in evidence testimony concerning the flight of appellant. On March 12, 1935, after complaint had been made to the authorities by Mrs. Powell, defendants Weisbrod and Cook, with their attorney, Mr. Underwood, were before the deputy district attorney in charge of the prosecution of the case. At that time the deputy in-

formed Cook that he would be arrested, and in discussing the amount of bail with his attorney stated that it would be $5,000. Upon his request and in order to try to secure bail he was permitted under certain restrictions to depart from the office, under promise of returning to the district attorney's office or to the office of his attorney the following morning. Cook did not appear and a search was made for him. Several days later he was found in the unpainted house of an old miner near El Monte. Evidence of flight is admissible as an indication of a guilty mind. The court did not err in receiving the evidence. (8 Cal. Jur. 44, sec. 158; *People* v. *Abbott*, 65 Cal. App. 120 [223 Pac. 77].)

The judgment and order are affirmed.

Crail, P. J., and McComb, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 21, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 5, 1935.