[Crim. No. 4590.   Second Dist., Div. Three.   Apr. 20, 1951.]

THE PEOPLE, Respondent, v. VIRGINIA THOMAS, Appellant.

Stanley L. Avery and Edward I. Gorman for Appellant.

Edmund G. Brown, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

VALLÉE, J.—Defendant was charged with assault with intent to commit murder. She was convicted of assault with a deadly weapon by the court sitting without a jury. She appealed from the judgment and sentence. As an appeal does not lie from the sentence, that appeal must be dismissed.

Defendant challenges the sufficiency of the evidence to sustain the judgment.

During the evening of June 16, 1950, a man named Mial, another named Holt, and Mr. and Mrs. Bennett were together. They visited several clubs where they drank beer. About 3 a. m. on June 17 they called at defendant's home. Defendant and a man named Perry were there. All parties then drank some whisky. Mrs. Bennett fell asleep in the liv-

ing room. Defendant and Mial went into the back bedroom. After a few minutes defendant came out of the bedroom, went into an adjoining bathroom, and then into the living room. She returned to the back bedroom. Mial was still there. Defendant came out shortly, went to the front bedroom, and came out with a gun in her hand. Bennett said to defendant, "There is no sense in all that . . . I will get him out of here." Defendant said something to the effect "I ought to kill him." She then returned to the back bedroom. Mial was still there. Defendant pointed the gun at Mial and pulled the trigger. The bullet hit him. Bennett saw defendant pull the trigger, saw the shot fired, saw the shot hit Mial, but did not see the bullet come out of the gun. Mrs. Bennett was awakened by the shot and saw the gun in defendant's hand. After she fired the shot, defendant returned to the living room and said "Don't nobody have to leave, aint nothing happened, nobody has to leave."

Mial, who was buttoning his shirt when the shot was fired, came out of the bedroom with his coat on his arm. Defendant, still holding the gun in her right hand, let him out the front door. Three or four minutes later the Bennetts and Holt left through the front door and found Mial lying on the lawn groaning. There was blood on his shirt. Bennett and Holt rushed him to a hospital where he was operated upon. He had been shot in the side and was in the hospital nearly three months.

The gun was found under the bed in the front bedroom of defendant's house loaded with four live cartridges and one empty shell. The bullet was found on the floor in the back bedroom. There was a bullet hole in the north wall of the back bedroom about 26 inches above the floor.

On June 19, 1950, an officer had a conversation with defendant. She asked him how Mial was. He asked her where she got the gun. She said a Mexican fellow had brought it to her house a month before. Defendant testified that she was holding the gun when it was fired but that it was discharged accidentally.

Mial testified that he had no recollection of what occurred at defendant's home because he was intoxicated; that he was shot in the right side that night.

The evidence establishes the foregoing facts and fully sustains the judgment. ▪ Defendant argues that because Bennett did not see the bullet leave the gun, because Mial did

not act as if he had been hit, and because he walked out of the house without aid, the trial court was not warranted in concluding that the bullet hit Mial. The argument is fallacious. Bennett testified that the bullet hit Mial. Further, the offense was committed when defendant aimed the gun at Mial and pulled the trigger. (*People* v. *McCoy,* 25 Cal.2d 177, 192 [153 P.2d 315].)

Defendant argues that there are many inconsistencies and contradictions in the testimony of Bennett, and that it was inherently improbable. It was the function of the trial court, not this court, to resolve inconsistencies and contradictions, if any, in the testimony of Bennett. The trier of fact may believe and accept a portion of the testimony of a witness and disbelieve the remainder. On appeal that portion which supports the judgment must be accepted, not that portion which would defeat, or tend to defeat, the judgment. (*People* v. *Hills,* 30 Cal.2d 694, 701 [185 P.2d 11]; *People* v. *Amy,* 100 Cal.App.2d 126, 127 [223 P.2d 69].) A judgment cannot be set aside on appeal unless it clearly appears that on no hypothesis whatever is there sufficient substantial evidence to sustain it. (*People* v. *Wolfeart,* 98 Cal.App.2d 653, 655 [220 P.2d 778].) The testimony of Bennett does not appear to be inherently improbable. Testimony is not inherently improbable unless it appears that what was related or described could not have occurred. (*Trancoso* v. *Trancoso,* 96 Cal.App.2d 797, 798 [216 P.2d 172].) "To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions." (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758]; see, also, *People* v. *Robinson,* 87 Cal.App.2d 772, 774 [197 P.2d 776].)

At the close of the People's case, defendant made a motion to dismiss, which was denied. She claims error. After the motion was denied, defendant introduced in evidence the testimony taken at the preliminary examination and testified in her own behalf. If she was satisfied that there was a total lack of evidence upon some essential issue she could have submitted the case on the evidence of the prosecution. On appeal from the judgment where insufficiency of the evidence is asserted our only function is to determine whether there is sufficient substantial evidence to support the conclusion

reached in the court below. (*People* v. *Lewis,* 124 Cal. 551, 553 [57 P. 470]; *People* v. *Jackson,* 78 Cal.App. 442, 450 [248 P. 1061].)

The appeal from the sentence is dismissed. The judgment is affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.